KUPFER BROS. CO. *v.* UNITED STATES (No. 1675).[1]

1. CONSTRUCTION—PARAGRAPH 332, TARIFF ACT OF 1913.

The words "plain, decorated, embossed, or printed, except by lithographic process," relate back to all that precedes them in paragraph 332, tariff act of 1913.

2. CONSTRUCTION—CHANGE OF LANGUAGE SIGNIFIES CHANGE OF MEANING.

In enacting paragraph 332, tariff act of 1913, Congress struck from the corresponding paragraph (415), tariff act of 1909, the terms "bands" and "strips." This evidences a congressional intention to exclude bands and strips from the operation of the paragraph and restrict it to the shapes or designs named and such as are *ejusdem generis* in the strictest sense.

3. "GOLD BORDERS," HOW DUTIABLE.

Merchandise invoiced as "gold borders," consisting of metal-coated paper cut into strips each about 2½ feet long and a quarter of an inch wide, embossed with a small ornamental design and with the letters "P" and "T," left attached to a very narrow border at each end for convenience in handling, used for fancy wrapping around candy boxes or similar packages, is dutiable as a *manufacture* of metal-coated paper, and not as metal-coated paper itself, under paragraph 324, tariff act of 1913. It is not dutiable as paper or a manufacture thereof under paragraph 332.

4. MANUFACTURE OF PAPER, WHAT IS.

Strips of paper made up so that nothing remains to be done to them before using but to detach their ends are so far advanced in condition that they are no longer simply paper, but have become a manufacture of it.

United States Court of Customs Appeals, May 12, 1916.

APPEAL from Board of United States General Appraisers, G. A. 7852 (T. D. 36161).
[Affirmed.]

*Allan R. Brown* for appellants.

*Bert Hanson,* Assistant Attorney General (*Harry M. Farrell,* special attorney, of counsel), for the United States.

---

[1] Reported in T. D. 36423 (30 Treas. Dec., 846).

[Oral argument Apr. 12, 1916, by Mr. Brown and Mr. Hanson.]
Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The merchandise in question was invoiced as gold borders. It consists of metal-coated paper cut into strips each about $2\frac{1}{2}$ feet long and one-quarter of an inch wide, embossed with a small ornamental design and with the letters "P" and "T." The strips which appear in the representative sample are 12 in number, and by the process of manufacture remain attached to a very narrow border at each end, evidently maintained for convenience in the use of the strips, which when used are torn off and devoted to their intended purpose. The only testimony in the case tends to show that these strips are used either for decorating or for fancy wrapping around candy boxes or similar packages. The latter use, from an examination of the sample, would appear to be the exclusive use to which they are adapted.

Duty was levied upon these articles at the rate of 35 per cent ad valorem under the provisions of paragraph 324 of the act of 1913, which, so far as material for the questions presented, reads as follows:

Papers wholly or partly covered with metal leaf, * * * 25 per centum ad valorem; * * * bags, envelopes, and all other articles composed wholly or in chief value of any of the foregoing papers, not specially provided for in this section, * * * 35 per centum ad valorem.

The protest makes two claims—first, that if the importation is dutiable under paragraph 324 at all, it should be under the provision for papers wholly or partly covered with metal leaf and not as articles composed wholly or in chief value of such papers. The second and the chief contention is that the articles are dutiable under paragraph 332, which reads as follows:

Papers or cardboard, cut, die cut, or stamped into designs or shapes, such as initials, monograms, lace, borders, or other forms, and all post cards, not including American views, plain, decorated, embossed, or printed, except by lithographic process, and all papers and manufactures of paper or of which paper is the component material of chief value, not specially provided for in this section, 25 per centum ad valorem.

The corresponding provisions of the tariff act of 1909 were before this court in United States *v.* Wyman (4 Ct. Cust. Appls., 411; T. D. 33851). The respective paragraphs considered in that case were paragraph 411, which provided for paper "wholly or partly covered with metal" and articles wholly or in chief value thereof, and the claim was made under the proviso of paragraph 415 of that act, which reads:

*Provided,* That paper embossed, or cut, die-cut, or stamped into designs or shapes, such as initials, monograms, lace, borders, bands, strips, or other forms, or cut or shaped for boxes, plain or printed but not lithographed, and not specially provided for in this section, shall be dutiable at 35 per centum ad valorem.

The merchandise in that case consisted of embossed paper ornaments composed in chief value of metal-coated paper, and the ques-

tion presented was under which of these two paragraphs the importation should have been classified. The conclusion of the court was that the importation was dutiable under paragraph 411 as metalcoated paper.

It is claimed by the importer that whereas under paragraph 415 of the act of 1909 the cut-outs, so called, were restricted to those which were "plain or printed but not lithographed," there is no such limitation under paragraph 332 of the present act, as by the construction contended for by the importers, that all that follows after the words "post cards" in paragraph 332 of the present act, to wit, "not including American views, plain, decorated, embossed, or printed, except by lithographic process," should be held to refer only to post cards. In other words, that all post cards, plain, decorated, embossed, or printed, except by lithographic process, are to be dutiable under paragraph 332, and that the provision for paper cut, die cut, or stamped into designs or shapes is not qualified by any terms of limitation.

If this construction of paragraph 332 be accepted we think it would not warrant the conclusion which the importer draws from it. The provision for "cardboard, cut, die cut, or stamped into designs or shapes, such as initials, monograms, lace, borders, or other forms," standing alone, we think, should be restricted to papers or cardboard not specifically provided for in other paragraphs. We think, however, that the board was right in holding that the terms "plain, decorated, embossed, or printed, except by lithographic process," relate back to all that precedes them in the paragraph; but it still leaves open the question as to whether papers provided for specifically as "wholly or partly covered with metal leaf" and "articles composed wholly or in chief value" of such paper, would be more specific than the words "plain, decorated, embossed, or printed," or, in other words, whether the word "decorated" should not be restricted to such decoration as would avoid conflict with other specific provisions of the different paragraphs.

But what seems to us of more significance in this paragraph 332 than the point made by importers' counsel is that the paragraph as it appeared in 1909 provided for "paper embossed, or cut, or die-cut, or stamped into designs or shapes, such as initials, monograms, lace, borders, bands, strips, or other forms," while it will be noted that the very words which would bring the present importation within the terms of this paragraph, namely, "bands and strips," have been stricken out of the new legislation. It must be assumed that there was some purpose in this and that the paragraph ought now to be restricted to such forms as are *ejusdem generis* in the strictest sense with the shapes or designs named, and the strong inference is that the words omitted were not believed to be of that class. In fact these strips are merely articles of utility, in a sense decorative, it is true,

but they are used for tying up parcels, a use to which ordinary twine might be devoted, and when once used serve no other purpose, which is not true of the other shapes named, namely, initials, monograms, lace, and borders, which are supposed to enjoy some permanence of use for decorative purposes. We think that this change in the paragraph is in itself sufficient to exclude the importation here involved from its terms.

This being so, the importation must be held dutiable either as paper or manufactures of paper not specially provided for, or it must fall within the provision for metal-coated paper or articles composed wholly or in chief value of metal-coated paper.

The board, in its holding upon the question of the status of the merchandise, said:

Moreover, we are fully satisfied from an examination of the sample in evidence that the articles represented thereby are more than mere forms which have been die cut and embossed from metal-coated paper; they are rather, in our judgment, completely finished manufactured articles which are susceptible of immediate use in their imported condition, merely requiring that they be detached at each end. In the use for which they were evidently designed they may be said to resemble pieces of silk ribbon which are commonly employed as ornamental wrappings for candy boxes. * * *

In the case at bar not only have the articles been advanced beyond the state where they might have been considered as consisting of papers wholly or partly covered with metal leaf, but their imported condition shows that they have reached and passed the final stage of manufacture required to transform them into fully finished articles, ready, as imported, for the use for which they were ultimately intended and designed. This condition, therefore, controls the classification of articles, and having passed the final stage of manufacture they must be deemed to be completed articles composed wholly of metal-coated paper, and as such they are specifically provided for in paragraph 324 of the present act, as classified by the collector.

We agree with the conclusion reached by the board. This article, which once was metal-coated paper, is no longer such. It has passed beyond that stage and constitutes a completed article ready for ultimate use, and is an article composed of metal-coated paper. Upon the subject of what constitutes a completed article, see Fenton *v.* United States (1 Ct. Cust. Appls., 529; T. D. 31546); Tilge *v.* United States (3 Ct. Cust. Appls., 97; T. D. 32360); Boye Needle Co. *v.* United States (5 Ct. Cust. Appls., 43; T. D. 34009); and Brunswick-Balke-Collender Co. *v.* United States (7 Ct. Cust. Appls., 1; T. D. 36253).

The decision of the board is *affirmed.*