Edward M. Poons Co. of Kobe, Inc. *v.* United States (No. 4180)[1]

United States Court of Customs and Patent Appeals, January 23, 1939

*Brooks & Brooks* (*Ernest F. A. Place* of counsel) for appellant.
*Webster J. Oliver*, Assistant Attorney General (*Charles D. Lawrence*, special assistant to the Attorney General, and *William J. Vitale*, special attorney, of counsel), for the United States.

[Oral argument December 5, 1938, by Mr. Place and Mr. Lawrence]

Before Garrett, Presiding Judge, and Bland, Hatfield, Lenroot, and Jackson, Associate Judges

Bland, Judge, delivered the opinion of the court:

Appellant here appeals from the judgment of the United States Customs Court, Second Division, which overruled its protests lodged against the classification by the collector at the port of New York of certain Toyo hats and Toyo cloth and his assessment of duty thereon. The Toyo hats and Toyo cloth were assessed with duty as

[1] C. A. D. 33.

manufactures of paper, not specially provided for, at 35 per centum ad valorem, most of the merchandise being classified under the provisions of paragraph 1313 of the Tariff Act of 1922. The merchandise (Toyo cloth) covered by protests 548620–G, 556375–G, 557936–G, and 633396–G was classified under the provisions of paragraph 1413 of the Tariff Act of 1930. Insofar as the issue of the instant case is concerned, the pertinent provisions of paragraph 1313, *supra*, and paragraph 1413, *supra*, are identical. So much of paragraph 1313 as is of importance here reads:

PAR. 1313. * * * manufactures of paper, or of which paper is the component material of chief value, not specially provided for, * * * 35 per centum ad valorem.

In protests 295841–G and 309481–G the merchandise was invoiced as "Okinawa celluloid paper hoods Tuskan," and assessed with duty under paragraph 1406, Tariff Act of 1922, at 35 per centum ad valorem as manufactures of straw. The record indicates that this assessment was erroneous and that the classification of this last-named merchandise should have been in accordance with the classification made in the entries covered by the other protests.

The importer claimed the Toyo hats and Toyo cloth, imported under the Tariff Act of 1922, to be classifiable as articles made from surface-coated paper under the provisions of paragraph 1305 of that act, and dutiable at 5 cents per pound and 20 per centum ad valorem. The importer claimed the Toyo cloth imported under the 1930 act to be dutiable at the same rate under paragraph 1405 of said act under a provision similar to that in paragraph 1305, Tariff Act of 1922. Paragraph 1305, *supra*, being identical with paragraph 1405, *supra*, so far as the instant issue is concerned, the pertinent portion thereof is quoted as follows:

PAR. 1305. Papers with coated surface or surfaces, not specially provided for, 5 cents per pound and 15 per centum ad valorem; * * * and all other articles, composed wholly or in chief value of any of the foregoing papers, not specially provided for, * * * 5 cents per pound and 20 per centum ad valorem * * *.

The imported material, according to the record, is manufactured in the following manner: Rolls or sheets of paper are cut into strips of narrow width, the width depending upon the fineness of the texture desired for the finished article. The strips are machine twisted and wound on a spool, after which they are dipped into a bath of cellulose material which adheres to the paper and is allowed to dry. The dipping and drying processes are repeated a sufficient number of times to form a coating, of a desired thickness, upon the paper. After drying, the twisted yarn-like threads or strings are put up in skeins 600 feet in length. The skeins of material are then, by a weaving process, formed into Toyo hats and Toyo cloth in the same manner that natural straw is used in making Panama hats.

The trial court held in substance that the instant goods did not consist of articles in chief value of surface-coated paper but were manufactures in chief value of paper or of which paper was the component material of chief value, and therefore were described in said paragraphs 1313 and 1413 of the two acts respectively. In deciding the case the trial court used the following apt language:

.We have stated that it is questionable whether the strips of paper which form the basic material in the imported articles, if separately imported, would properly be classifiable as mere paper. They were cut for a specific purpose, and, as above indicated, would seem to be paper partly manufactured. In the very paragraph under which these hats and cloth were classified there is a provision which reads: "papers * * * cut * * * into designs or shapes, such as * * * strips, or other forms, or cut or shaped for boxes or other articles." That would seem to indicate that the Congress differentiates between paper and strips cut therefrom for a specified purpose.

Be that as it may, there can exist no possible doubt concerning the result accomplished by the machine-twisting of such strips into skeins. Surely the skeins are not merely paper, and any coating applied thereto does not make them simply coated paper and nothing more. In fact, there appear to be four steps in the manufacture of the imported articles: (1) the cutting of the original paper rolls into strips of prescribed widths; (2) the twisting of the strips into skeins; (3) the coating of the skeins; and (4) the weaving of the skeins into the toyo hats and cloth.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Clearly, those provisions [paragraphs 1305 and 1405, *supra*] contemplate (1) surface-coated paper as material and (2) articles made wholly or in chief value of such material. They do not apply to the present articles since the only paper which formed the basic materials therein is an uncoated paper. * * *

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

In making these hats and cloth, coated paper as such never existed. Hence, it may not successfully be contended that the articles are made of such paper.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

If, therefore, the present articles were composed of more than one material but in chief value of surface-coated paper, the coating would have to appear on the paper *before* it entered the article, and that would be "its condition as found in the article." In other words, surface-coated paper as such would be the most valuable component in the article. That would not be true where the coating was applied to a material which was no longer paper but an article made therefrom, to wit, paper skeins, as in the present case.

The trial court in rendering its decision relied very largely upon this court's decision involving the determination of the term "manufactures" in *A. H. Ringk & Co. et al.* v. *United States*, 16 Ct. Cust. Appls. 132, T. D. 42769. The Government, in urging the correctness of the conclusion of the trial court, particularly emphasizes, as being in point on the issue involved, the case of *Kupfer Bros. Co.* v. *United States*, 7 Ct. Cust. Appls. 86, T. D. 36423 (also cited by the trial court), and other authorities which, in view of our conclusion, require no discussion here.

It seems to us that the conclusion reached by the trial court is so thoroughly justified by the clear logical reasoning in the above-quoted

language that but little need be added here. We are in entire agreement with the trial court·in its holding that the Toyo hats and Toyo cloth at bar are not manufactures of surface-coated paper but are manufactured from an article made from paper, which article had been coated with celluloid. In the *Ringk & Co.* case, *supra*, we said:

The word "manufactures" is not always limited to the ultimate, final, completed article of or for which the one in question may be material. It includes materials which have been "subjected to successive processes of manufacture, each one of which is complete in itself, but several of which may be required to make the final product. * * * *the finished product of one manufacture* thus becoming the material of the next in rank." (Italics ours.) *Tide Water Oil Co.* v. *United States*, 171 U. S. 210; *Hartranft* v. *Wiegmann*, 121 U. S. 609; *Saltonstall* v. *Wiebusch*, 156 U. S. 601; *Worthington* v. *Robbins*, 139 U. S. 337; *United States* v. *Dudley*, 174 U. S. 670; *Fenton* v. *United States*, 1 Ct. Cust. Appls. 529, T. D. 31546. It includes articles which, because of the extent to which they have been processed, have "attained a distinctive name, character, or use, different from that originally possessed by the material or materials" from which they were made. *Ishimitsu* v. *United States*, 11 Ct. Cust. Appls. 186, T. D. 38963.

It took several manufacturing steps to bring the rolls or sheets of paper to the condition where the machine-twisted strips were ready for the celluloid finish treatment. It required an additional manufacturing step to coat the twisted paper threads into the condition in which they were found in the 600-foot skeins. The skeins became the "finished product of one manufacture" which in turn became the material for the next manufacturing step in rank, to wit—weaving the same into the articles at bar.

The case of *Kupfer Bros. Co.* v. *United States*, *supra*, involved a consideration of merchandise invoiced as "gold borders" which consisted of metal-coated paper cut into strips each about 2½ feet long and one-quarter of 1 inch wide, embossed with a small ornamental design and with the letters "P" and "T." The strips were used for decorating or for fancy wrapping around candy boxes or similar packages. They were assessed for duty at 35 per centum ad valorem under the provisions of paragraph 324 of the tariff act of 1913, which when deleted of certain immaterial language appears as follows:

Papers wholly or partly covered with metal leaf, * * * 25 per centum ad valorem; * * * bags, envelopes, and all other articles composed wholly or in chief value of any of the foregoing papers, not specially provided for in this section, * * * 35 per centum ad valorem.

It was contended there by the importer under the protest claim that the importation was dutiable at only 25 per centum under said paragraph 324 as "Papers wholly or partly covered with metal leaf." After quoting the holding of the board, the court's conclusion was summed up in the following language:

We agree with the conclusion reached by the board. This article, which once was metal-coated paper, is no longer such. It has passed beyond that stage

and constitutes a completed article ready for ultimate use, and is an article composed of metal-coated paper. * * *

The reasoning in that case prompts the conclusion in the case at bar that the trial court properly found that the strips of paper, even before they had been twisted and treated with celluloid, had ceased to be mere paper but were articles made from paper.

We have read the brief of appellant with great care and the decisions relied upon there we think are not sufficiently in point on the issue at bar to justify a conclusion that the collector erred in his classification and assessment of duty of the instant merchandise.

In view of our conclusion that the instant merchandise is not an article composed of paper with a coated surface or surfaces, the doctrine of relative specificity, relied upon by appellant, has no application.

Appellant further argues, in support of its contention, that the imported articles are composed wholly or in chief value of surface-coated paper, that "The time at which a process is applied and the order in which processes are applied are immaterial, if, at the time of importation, an article or commodity answers to the descriptive designations of provisions in tariff acts," and cites cases which it regards as being in support of its contention. This contention may be answered by the simple statement that there is no surface-coated paper in the article at bar. We have articles—hats and cloth made from surface-coated twisted paper strips. It seems to us that these particular facts amply distinguish the cases relied upon by the appellant.

Lastly, it may be suggested that if the hats and cloth involved are articles made from other articles made from paper they cannot be regarded as "manufactures of paper or of which paper is the component material of chief value," as they were classified by the collector and so held to be by the trial court. If you start with paper and finish with an article in which paper is the component material of chief value, it is immaterial if in the process of manufacturing the article a completely manufactured article, which is in the form of material for future manufacturing efforts, results. Just here is where the rule which appellant seeks to invoke by some of the cited cases is applicable. We do not here have language in the controverted provision for manufactures of paper which permits the application of the rule which was involved in *Cohn & Lewis* v. *United States*, 25 C. C. P. A. (Customs) 220, T. D. 49335. There the term "manufactured wholly or in part of wool felt" required that wool felt must have a separate existence. The record in that case showed no separate existence of the wool felt and it was held that the provision did not cover the imported merchandise which had been classified as wool felt wearing apparel. The situation is different in the case at bar. The

merchandise falls squarely under the provision "manufactures of paper or of which paper is the component material of chief value" for the reason that the manufacturing effort began with paper and ended with an article in which paper was the component material of chief value.

As to the merchandise covered by protests 295841–G and 309481–G, which was assessed with duty at the rate of 35 per centum ad valorem under paragraph 1406, Tariff Act of 1922, as manufactures of straw, it is obvious, as is held by the trial court, that it should have been classified as manufactures of paper, at the rate of duty applicable, under paragraph 1313, *supra*. Since we conclude that appellant in its protests did not claim this merchandise to be dutiable under the right paragraph, agreeable to our holding above, it follows that the classification thereof by the collector, even though erroneous, must nevertheless be permitted to stand.

We think that the trial court arrived at the right conclusion in sustaining the collector's classification and assessment of duty of the imported merchandise and its judgment is *affirmed*.

GARRETT, Presiding Judge, concurs in the conclusion.