UNITED STATES *v*. W. X. HUBER CO. (No. 4414)[1]

---

[1] C .A. D. 231.

United States Court of Customs and Patent Appeals, March 1, 1943

*Paul P. Rao*, Assistant Attorney General (*Richard F. Weeks, Richard H. Welsh,* and *Joseph F. Donohue*, special attorneys, of counsel) for the United States.

*Philip Stein* for appellee.

[Oral arugment February 3, 1943, by Mr. Donohue and Mr. Stein]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

The Government has taken this appeal from a judgment of the United States Customs Court (Second Division) sustaining a protest of appellee against the assessment, by the collector at the port of Los Angeles, of duty upon certain merchandise invoiced as "coffee filter papers," under the provisions of paragraphs 1413 and 1404 of the Tariff Act of 1930.

The collector held that the involved merchandise consisted of tissue paper cut to shapes.

The protest claimed dutiability of the merchandise under the provisions of paragraph 1409 as filtering paper.

Said paragraphs of the tariff act here involved read, insofar as they are here pertinent, as follows:

PAR. 1413. Papers and paper board and pulpboard, including cardboard and leatherboard or compress leather, embossed, cut, die-cut, or stamped into designs or shapes, such as initials, monograms, lace, borders, bands, strips, or other forms, or cut or shaped for boxes or other articles, plain or printed, but not lithographed; and not specially provided for; * * * 30 per centum ad valorem; * * *.

PAR. 1404. Papers commonly or commercially known as tissue paper, stereotype paper, and copying paper, india and bible paper, condenser paper, carbon paper, coated or uncoated, bibulous paper, pottery paper, tissue paper for waxing, and all paper similar to any of the foregoing, not specially provided for, colored or uncolored, white or printed, weighing not over six pounds to the ream, and whether in sheets or any other form, 6 cents per pound and 20 per centum ad valorem;

* * *: *Provided,* That no article composed wholly or in chief value of one or more of the papers specified in this paragraph shall be subject to a less rate of duty than that imposed upon the component paper of chief value of which such article is made: * * *.

PAR. 1409. * * * filtering paper, 5 cents per pound and 15 per centum ad valorem; * * *.

While the collector classified the merchandise under paragraph 1413, having found that the material consisted of tissue paper cut to shapes, he applied the rate of duty prescribed for tissue paper in paragraph 1404.

Both parties introduced testimony.

During the course of the trial, appellant sought to lay the foundation for the introduction in evidence of the record in another case, viz, Suit 4219, *United States* v. *H. V. Albrecht, Albrecht Import Co., Inc., and Stanley Jordan & Co.,* 27 C. C. P. A. (Customs) 112, C. A. D. 71.

The court sustained certain objections by appellee to a question directed to the Government's witness and offer of proof, by appellant with respect to the similarity of the merchandise involved in the case last cited to the merchandise here involved, and appellant has assigned error in sustaining such objections.

The merchandise in question consists of paper disks, ranging in diameter from 2¼ up to 17 inches.

The trial court held that the evidence of appellee showed "at least *prima facie,* that the paper from which the imported disks have been cut is not commonly or commercially known as tissue paper." The court further found that disks of the kind under consideration and the paper from which they were cut were, at and before the enactment of the Tariff Act of 1930, chiefly used for filtering purposes, and that the merchandise is duitiable under paragraph 1409, the court stating that it considered said paragraph more specific than paragraph 1413.

Judgment was entered accordingly and the Government appealed.

Before discussing the merits of the controversy, we think it proper to call attention to a misconstruction by the trial court of our holding in the case of *United States* v. *H. V. Albrecht, et al., supra.*

After citing said case and stating the issues there involved the trial court in its decision stated:

In the above case this court sustained the plaintiffs' claim in the belief they had shown chief use of the paper disks, at and prior to the passage of the Tariff Act of 1930, for filtering purposes, and we are still of that opinion.

The appellate court, however, in reversing our decision, stated among other things, as follows:

In this court appellees in their brief state:
The cutting or stamping of the imported paper into the form of disks does not create a new or different article nor does it remove the paper from the category of filtering paper. * * *.
No issue has been tendered on this question and we will proceed to decide the issue upon appellees' theory that no new article has emanated by a manufactur-

ing process from the paper from which the disks were cut. Obviously, if no new article has resulted, the paper from which the disks were cut must necessarily have been filtering paper if the articles of the present importation are filtering paper. Therefore, in considering whether the importation should be regarded as filtering paper, it is necessary that proof as to chief use must cover not only the article imported but also the paper from which it was cut.

It is obvious from the record that the importers never attempted to prove that merchandise of the class to which the imported merchandise belongs was chiefly used for filtering purposes prior to and on the date of the passage of the tariff act, although appellees very earnestly contend in argument in this court that "All the evidence shows that this merchandise is and always has been used exclusively for filtering purposes."

As a matter of fact, however, the evidence of two of plaintiffs' witnesses in the above case showed the *sole* use of the merchandise therein at and prior to the enactment of said act to be for filtering purposes, one testifying as to the use of the paper disks 12 years before trial (1937 or 1938), and the other for 20 years before that time.

It will be observed from the above quotation that the trial court was of the opinion that our decision in the cited case was erroneous, but a reading of the portion of the opinion quoted by it shows that we did not hold that the importers had not established chief use of paper disks like those there involved at and prior to the passage of the Tariff Act of 1930, but assuming without deciding that the disks were filtering paper we held that there was no evidence respecting the chief use of filtering paper at and prior to the enactment of said tariff act. It is plain, therefore, that the trial court misinterpreted our decision in said case.

Coming now to the merits of the controversy, we are in agreement with the trial court that appellee established *prima facie* that disks similar to those here involved, and the paper from which they were cut, were, at and prior to the enactment of the Tariff Act of 1930, chiefly used for filtering purposes.

Therefore, the presumption of the correctness of the finding by the collector that the involved disks were cut from tissue paper was *prima facie* rebutted by appellee and appellant introduced no evidence upon this point.

In view of our conclusion upon another branch of the case, it is unnecessary to here review at length the evidence of appellee upon the question of the chief use of paper disks similar to those here involved, and the paper from which they were cut, at and prior to the enactment of the Tariff Act of 1930.

It is sufficient to say that the evidence on behalf of appellee consists of a sample of the involved merchandise marked Exhibit 1, and the testimony of one witness, M. M. Wheeler, who testified on October 10, 1940, and on February 26, 1941, that for 11 years he had been connected with the importer of the involved merchandise who was engaged solely in the jobbing of paper of all descriptions, both imported and domestic; that during that time he had experience in buying and selling and handling tissue papers, and also in buying

and selling, since 1929, paper disks like those here involved; that he had also bought since 1929 sheets of paper from which his company cut disks similar in quality to that of Exhibit 1; that he had seen disks similar to Exhibit 1 since 1929 used in individuals' homes, in his own home, in restaurants and in the hands of coffee dealers; that they were always used in brewing coffee by the drip method, the disks serving as a filter, and that he had never seen them used for any other purpose; that he had endeavored to sell sheets of paper, similar to that from which Exhibit 1 was cut, as printing paper, but was not able to sell them for the reason that they were not strong enough; that he had never sold or offered such sheets as tissue paper because they would not serve the purpose of tissue papers; that tissue paper because of its quality cannot be used for filtering purposes; that he had never seen such sheets as are here involved imported except those imported by his company, and that the only use to which the sheets were put was for filtering purposes after cutting them into disks.

We do not deem it necessary to further discuss the testimony in behalf of appellee. We are of the opinion that such testimony *prima facie* established that the involved disks were not cut from tissue paper, and that the chief use of disks similar to that of Exhibit 1 and of the paper from which they were cut was, at the time of and before the enactment of the Tariff Act of 1930, for filtering purposes.

We cannot therefore sustain the holding of the collector that paragraph 1404 is applicable to the merchandise here involved, inasmuch as neither filtering paper nor disks cut therefrom are embraced within the provisions of said paragraph.

Appellant cites a number of decisions by the Customs Court and a decision by a Federal district court that disks cut from filtering paper should be held to be filtering paper, because no new article has resulted by reason of such cutting.

Under the authorities cited we are of the opinion that except for the provisions of paragraph 1413 the involved merchandise would be classifiable as filtering paper under the provisions of paragraph 1409.

Appellee invokes the general rule that an *eo nomine* designation includes the articles named in all of its forms. While this rule is well settled, it is of course not applicable where a contrary legislative intent otherwise appears. *Smillie & Co.* v. *United States*, 11 Ct. Cust. Appls. 199, T. D. 38966.

If in paragraph 1413 Congress intended that paper such as is here involved when cut into forms should be subject to the duty therein prescribed, then it is clear that paragraph 1409 has no application to the disks here considered.

It was the view of the trial court that paragraph 1409 is "more specific than paragraph 1413 as applied to the merchandise."

Paragraph 1413, hereinbefore quoted, omitting the parts thereof not here directly pertinent, reads as follows:

PAR. 1413. Papers * * * cut, die-cut, or stamped into * * * shapes, such as * * * bands, strips, or other forms, * * * plain or printed, * * * and not specially provided for; * * * 30 per centum ad valorem; * * *.

We are of the opinion that the term "papers" as used in the paragraph includes plain filtering paper. Evidently the trial court was of the same opinion, its holding being that paragraph 1409 is more specific than paragraph 1413, as applied to the instant merchandise.

Appellee argues that the phrase "not specially provided for" relates back to papers, so that the paragraph should be construed as reading "Papers not specially provided for," limiting the paragraph to papers not having an *eo nomine* designation.

To so hold would largely nullify the paragraph. We find in the paper schedule of said tariff act more than 25 kinds of paper, either *eo nomine* designated or described, none of which under appellee's theory would be subject to the provisions of paragraph 1413.

It is our opinion, for the reasons hereinafter stated, that paragraph 1413 embraces filtering paper cut into forms.

The first tariff provision specially providing for paper cut into forms appeared in the Tariff Act of 1909 in the form of a proviso of paragraph 415 of that act, which proviso read in part as follows:

* * * That paper embossed, or cut, die-cut, or stamped into designs or shapes, such as initials, monograms, lace, borders, bands, strips, or other forms, or cut or shaped for boxes, plain or printed but not lithographed, and not specially provided for in this section, shall be dutiable at thirty-five per centum ad valorem; * * *.

It will be observed that the quoted portion of this proviso is, for the most part, identical with the provision of paragraph 1413 here involved.

This proviso was enacted after a decision of the Circuit Court of Appeals, Second Circuit, in the case of *Hamilton et al.* v. *United States,* 167 Fed. 796. That case arose under the Tariff Act of 1897 and involved the classification of plain paper stamped by a single operation into shapes with lace-like effects, the same being used for placing on the tops of packages of candy, etc., or under finger bowls.

The question was whether such articles should be classified as paper not otherwise provided for under paragraph 402 of that act, or as manufacturers of paper under paragraph 407.

The court held that the merchandise was dutiable as "paper" rather than as "manufactures of paper."

In the case of *Knauth, Nachod & Kuhne* v. *United States,* 3 Ct. Cust. Appls. 183, T. D. 32465, this court construed said proviso of paragraph 415 of the tariff act of 1909. The merchandise involved in that

case consisted of printed paper advertising cards, with the outline of a picture die-cut into them after the manner of a stencil.

The opinion states:

The proviso to paragraph 415 of the tariff act of 1909 is new in tariff legislation. It was undoubtedly prompted by the decision of the United States Circuit Court of Appeals for the Second Circuit in Hamilton v. United States (T. D. 29519). That case arose under the tariff act of 1897 and concerned like articles of merchandise. There being no provision similar to the proviso to paragraph 415 of the present act in the tariff act of 1897 the goods were assessed by the collector as "manufactures of paper" under paragraph 407 of that act. They were claimed to be properly dutiable as "printed matter" by the importer, and alternatively as "all other paper not specially provided for." The rates on each such being the same under that act the court held that inquiry academic and declined to discuss it. The court, however, held that the articles were not manufactures of paper, the die cutting and printing thereupon not having the effect of constituting the paper a manufacture of paper, and sustained the protest, reversing the decision of the lower court and the board. See Hamilton v. United States, *supra.*

It appears from "Notes on Tariff Revision" that this litigation was called to the attention of the Congress, and undoubtedly the proviso to paragraph 415, *supra,* was incorporated in the present tariff act in order that an increased rate of duty, over and above that upon paper, might be provided for such articles as these, which are paper both printed and die cut.

* * * The language of the proviso requires that they be not only cut, but that they be cut into designs or shapes such as initials, monograms, lace, borders, bands, strips or other forms. The forms upon these articles we think within that class. These qualifying words negative this contention of the appellant. The further language of the proviso that they must not only be "die cut" but may also be "plain or printed but not lithographed" places the imported articles within the precise language of the proviso. A more specific provision as applied to the importations in question could not without great difficulty be devised.

We also deem it proper to here observe that in the "Notes on Tariff Revision," 1909, the attention of Congress was called to the case of *Murphy* v. *United States,* 148 Fed. 336. The comment is found on page 529 under the head of "Filtering paper" following the quotation of paragraph 397 of the Tariff Act of 1897 which provided for filtering paper.

It reads as follows:

DECISIONS AND INTERPRETATIONS.—In Murphy v. United States (148 Fed. Rep., 336; T. D. 26927, January 22, 1895) it was held that filtering paper cut into disks remained filtering paper for tariff purposes and was not dutiable as a manufacture of paper.

COMMENTS AND SUGGESTIONS.—A paragraph amended to meet these conditions is submitted herewith.

The suggested amendment does not appear in the volume, possibly because it was thought that said proviso of paragraph 415, *supra,* was sufficient to meet the "conditions" created by the decision there cited.

Paragraph 332 of the Tariff Act of 1913 read as follows:

Papers or cardboard, cut, die cut, or stamped into designs or shapes, such as initials, monograms, lace, borders, or other forms, and all post cards, not includ-

ing American views, plain, decorated, embossed, or printed, except by lithographic process, and all papers and manufactures of paper or of which paper is the component material of chief value, not specially provided for in this section, 25 per centum ad valorem.

It will be observed that the first part of this paragraph is very similar to that portion of paragraph 1413, *supra*, except that it does not contain the words "bands, strips" as did the proviso to paragraph 415 of the Tariff Act of 1909.

The construction of said paragraph 332 was considered by this court in the case of *Kupfer Bros. Co.* v. *United States*, 7 Ct. Cust. Appls. 86, T. D. 36423. The merchandise there involved consisted of metal-coated paper cut into strips each about 2½ feet long and one-quarter of an inch wide.

The court held that the merchandise should be classified as completely manufactured articles under paragraph 324 of said act of 1913 and not under paragraph 332 as claimed by the importer.

In considering the applicability of paragraph 332 the court stated:

But what seems to us of more significance in this paragraph 332 than the point made by importers' counsel is that the paragraph as it appeared in 1909 provided for "paper embossed, or cut, or die-cut, or stamped into designs or shapes, such as initials, monograms, lace, borders, bands, strips, or other forms," while it will be noted that the very words which would bring the present importation within the terms of this paragraph, namely, "bands and strips," have been stricken out of the new legislation. It must be assumed that there was some purpose in this and that the paragraph ought now to be restricted to such forms as are *ejusdem generis* in the strictest sense with the shapes or designs named, and the strong inference is that the words omitted were not believed to be of that class. In fact these strips are merely articles of utility, in a sense decorative, it is true, but they are used for tying up parcels, a use to which ordinary twine might be devoted, and when once used serve no other purpose, which is not true of the other shapes named, namely, initials, monograms, lace, and borders, which are supposed to enjoy some permanence of use for decorative purposes. We think that this change in the paragraph is in itself sufficient to exclude the importation here involved from its terms.

That part of paragraph 1413 here considered is identical with the first part of paragraph 1313 of the Tariff Act of 1922 and it will be noted that the words "bands, strips" found in the proviso to paragraph 415 of the Tariff Act of 1909, and omitted in paragraph 332 of the Tariff Act of 1913 were restored in the corresponding paragraph of the Tariff Act of 1922 and are now contained in paragraph 1413, *supra*.

Therefore, the observations of the court in the case of *Kupfer Bros. Co.* v. *United States*, *supra*, regarding the doctrine of *ejusdem generis* as applied to the merchandise there involved are not applicable to paragraph 1413 of the Tariff Act of 1930, and we are clearly of the opinion that the circular disks here involved are *ejusdem generis* with paper in the form of bands and strips.

It appears that the prototype of paragraph 1413, *supra*, found in the proviso of paragraph 415 of the Tariff Act of 1909 was enacted in part for the purpose of subjecting plain or printed paper "cut, die-cut, or stamped into designs or shapes, such as * * * bands, strips, or other forms * * *" to a higher duty than the paper from which the articles were stamped or cut, except as otherwise specifically provided for in that tariff act. This court, in effect, in the case of *Knauth, Nachod & Kuhne* v. *United States, supra,* so held.

We therefore hold that filtering paper is included in the term "paper" as used in paragraph 1413, and that the involved disks are embraced therein.

In conclusion, while we hold upon the record before us that paragraph 1404 has no application to the involved merchandise, and it should have been classified solely under paragraph 1413, appellee has made no such claim in its protest, and therefore it is not entitled to a classification of the merchandise solely under the provisions of paragraph 1413.

It is familiar doctrine that it is not enough for the importer to establish that the collector was wrong in his assessment of duty, but in order to secure relief he must claim in his protest the proper dutiable provision and establish that claim upon the trial.

In view of the above facts, we hold that while it is our opinion that on the record before us the collector was wrong in his assessment of duty under paragraph 1404, the assessment of the collector must stand, appellee having made no claim that the merchandise is dutiable under paragraph 1413.

In view of the foregoing, it is unnecessary for us to consider appellant's assignment of error with respect to the exclusion of evidence by the trial court.

For the reasons stated, the judgment appealed from is *reversed.*