A. D. COHEN CO., INC. *v.* UNITED STATES (No. 4466)[1]

---

[1] C. A. D. 278.

United States Court of Customs and Patent Appeals, April 27, 1944

*John D. Rode* for appellant.

*Paul P. Rao*, Assistant Attorney General (*Joseph F. Donohue*, special attorney, of counsel), for the United States.

[Oral argument April 6, 1944, by Mr. Rode and Mr. Donohue]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Second Division, overruling a protest by appellant against the classification and assessment with duty by the collector at the port of New York of certain hats under the provisions of paragraph 1504 of the Tariff Act of 1930, which, insofar as is here pertinent, reads as follows:

PAR. 1504. (a) Braids, plaits, laces, and willow sheets or squares, composed wholly or in chief value of straw, chip, paper, grass, palm leaf, willow, osier, rattan, real horsehair, cuba bark, or manila hemp, and braids and plaits, wholly or in chief value of ramie, all the foregoing suitable for making or ornamenting hats, bonnets, or hoods   *   *   *.

(b) Hats, bonnets, and hoods, composed wholly or in chief value of straw, chip, paper, grass, palm leaf, willow, osier, rattan, real horsehair, cuba· bark, ramie, or manila hemp, whether wholly or partly manufactured:

*      *      *      *      *      *      *

(2) not blocked or trimmed, if bleached, dyed, colored, or stained, 25 cents per dozen and 25 per centum ad valorem   *   *   *.

Appellant claimed that the hats are dutiable under paragraph 1413 of said act which, insofar as is here pertinent, reads as follows:

Par. 1413.   *   *   *   manufactures of paper, or of which paper is the component material of chief value, not specially provided, all the foregoing, 35 per centum ad valorem   *   *   *.

The cause was submitted to the trial court upon the following stipulation:

It is hereby stipulated and agreed by and between counsel for the plaintiff and the Assistant Attorney General for the United States that the merchandise assessed with duty at 25% ad valorem and 25c per dozen under Par. 1504 (b) (2)

of the Tariff Act of 1930 consists of hats or hoods, not blocked or trimmed, manufactured as follows:

1. Rolls or sheets of colored paper are cut into strips of narrow width, the width depending upon the fineness of the texture desired for the finished article;

2. The strips are machine twisted and wound on a spool, after which they are dipped into a cellulose material which adheres to the paper, and is allowed to dry; the dipping and drying processes are repeated a sufficient number of times to form a coating, of a desired thickness, upon the twisted paper strips;

3. After drying, the twisted yarn-like threads or strings are put up in skeins 600 feet in length;

4. The skeins of material are then, by a weaving process, formed into hats or hoods.

5. The skeins of material have other substantial uses in the formation of other articles, such as in the formation of the woven paper cloth which was before the court in *Edward M. Poons Co. of Kobe, Inc.* v. *United States*, 26 C. C. P. A. 310 C. A. D. 33, and therein held dutiable at 35% ad valorem under Par. 1413 of the Tariff Act of 1930.

It is further stipulated and agreed that the protest be submitted on this stipulation, the protest being limited to the merchandise described herein and to the claim that said merchandise is dutiable at 35% ad valorem under Par. 1413 of the Tariff Act of 1930.

It is appellant's contention that the involved hats are not composed wholly or in chief value of paper, but are composed of twisted coated strands of paper, which are more than paper and have a new name, new uses, and separate tariff standing. It, therefore, contends that the involved hats are manufactures of paper of which paper is the component material of chief value.

In support of this contention reliance is very largely had upon our decision in the case of *Edward M. Poons Co. of Kobe, Inc.* v. *United States*, 26 C. C. P. A. (Customs) 310, C. A. D. 33, in which we held that "Toyo" paper hats, made from material similar to the material from which the involved hats were made and in the same manner, were held to be dutiable under paragraph 1313 of the Tariff Act of 1922 as manufactures of paper, and not under paragraph 1305 of the same act as articles composed wholly or in chief value of surface coated paper.

The trial court, in its decision in the case at bar, quoted from our decision in the case last cited as follows:

We are in entire agreement with the trial court in its holding that the Toyo hats and Toyo cloth at bar are not manufactures of surface-coated paper but are manufactured from an article made from paper, which article had been coated with celluloid.

     \*       \*      \*      \* ·     \*      \*      \*

The reasoning in that case (*Kupfer Bros. Co.* v. *United States*, 7 Ct. Cust. Appls. 86) prompts the conclusion in the case at bar that the trial court properly found that the strips of paper, even before they had been twisted and treated with celluloid, had ceased to be mere paper but were articles made from paper.

The trial court, following said quotation, stated:

Had the appellate court made no further statement in the *Poons* case than that quoted above, that decision might be considered as supporting to some extent the position of the plaintiff herein, but later on in the same decision the appellate court also stated:

Lastly, it may be suggested that if the hats and cloth involved are articles made from other articles made from paper they cannot be regarded as "manufactures of paper or of which paper is the component material of chief value," as they were classified by the collector and so held to be by the trial court. *If you start with paper and finish with an article in which paper is the component material of chief value, it is immaterial if in the process of manufacturing the article a completely manufactured article, which is in the form of material for future manufacturing efforts, results.* Just here is where the rule which appellant seeks to invoke by some of the cited cases is applicable. We do not here have language in the controverted provision for manufactures of paper which permits the application of the rule which was involved in *Cohn & Lewis* v. *United States,* 25 C. C. P. A. (Customs) 220, T. D. 49335. There the term "manufactured wholly or in part of wool felt" required that wool felt must have a separate existence. The record in that case showed no separate existence of the wool felt and it was held that the provision did not cover the imported merchandise which had been classified as wool felt wearing apparel. The situation is different in the case at bar. The merchandise falls squarely under the provision "manufactures of paper or of which paper is the component material of chief value" for the reason that the manufacturing effort began with paper and ended with an article in which paper was the component material of chief value. [Italics ours.]

The trial court then pointed out that the cited case arose under the Tariff Act of 1922 which contained no provision for hats composed wholly or in chief value of paper, and applying our reasoning in that case respecting our holding that the hats there involved were manufactures of paper, it held that the hats here involved were composed wholly or in chief value of paper and were dutiable as classified by the collector.

We shall later herein discuss the applicability of the cited case, but will first consider certain contentions of appellant.

Appellant's counsel in his brief contends that the material from which the hats were made was not paper but was twisted coated strands of paper, and that because such strands had other uses than that of material for hats, and would not come under the tariff classification of "paper," the involved hats cannot be held to be composed wholly or in chief value of paper. In support of such contention, the case of *Isler & Guye* v. *United States,* decided by the Customs Court, T. D. 42685, 53 Treas. Dec. 352, is relied upon, wherein it was held that certain hats composed of grass were not dutiable under paragraph 1406 of the Tariff Act of 1922, which paragraph, insofar as it was there pertinent, read as follows:

PAR. 1406. Braids, plaits, laces, and willow sheets or squares, composed wholly or in chief value of straw, chip, grass, palm leaf, willow, osier, rattan, real horsehair, cuba bark, or manila hemp, suitable for making or ornamenting hats, bonnets, or hoods, not bleached, dyed, colored, or stained, 15 per centum ad valorem; bleached, dyed, colored, or stained, 20 per centum ad valorem; hats, bonnets, and hoods *composed wholly or in chief value of any of the foregoing materials,* whether wholly or partly manufactured, but not blocked or trimmed, 35 per centum ad valorem * * * . [Italics ours.]

The court, in the cited case, held that inasmuch as the hats there involved were woven from grass in its natural state, and were not composed of the articles named in the paragraph, viz, "Braids, plaits, laces, and willow sheets or squares," they were excluded from paragraph 1406 of said act.

Appellant's counsel points out that said decision of the Customs Court was called to the attention of Congress prior to the enactment of the Tariff Act of 1930 by the Tariff Commission in the following language: (Memorandum of Court Decisions Affecting Tariff Act of 1922, pages 46, 47.)

Par. 1406. In the case of *Isler & Guye* v. *United States*, T. D. 42685, 53 Treas. Dec. 352, the Court held that hats woven from grass in its natural state and not made from "braids, plaits, laces, and willow sheets or squares," were not dutiable at 35 per centum ad valorem under paragraph 1406 as classified by the collector of customs, but were dutiable as a manufacture of grass at 25 per centum ad valorem under paragraph 1439. The Court held that unless the hats were made from braids, plaits, etc., they were not within the provision.

If this decision is not in accordance with the Congressional intent, the paragraph should be amended. The following provision is suggested to cure the defect:

Par. 1406. (Braids, plaits, laces, and willow sheets or squares, composed wholly or in chief value of straw, chip, grass, palm leaf, willow, osier, rattan, real horsehair, cuba bark, or manila hemp,) * * * hats, bonnets, and hoods composed wholly or in chief value of any of the foregoing, *or the foregoing* materials *from which made*, whether wholly or partly manufactured, but not blocked or trimmed, 35 per centum ad valorem * * *." [Matter in parentheses supplied by me.]

As this proposed amendment would, if adopted, have included such hats as are here involved in paragraph 1504 of the Tariff Act of 1930, but was not adopted, appellant argues that it was the intent of Congress to exclude such hats from the paragraph.

However, appellant has overlooked the fact that in the hearings before the Ways and Means Committee of the House it appears that the decision in the case of *Isler & Guye* v. *United States, supra*, which was decided April 4, 1928, was also specifically brought to the attention of the committee on February 15, 1929, in the brief presented by "The Hat Institute, Straw Hat Group, Tariff Committee," Vol. 14, Tariff Readjustment, 1929, p. 7205, wherein it was stated:

The tariff act of 1922 intended to impose a duty of 35 per cent ad valorem upon hats, bonnets, and hoods made of the raw materials mentioned in paragraph 1406, whether made directly from the raw materials or whether made from the intermediary condition of braids, plaits, etc. However, the decision of the United States Customs Court of April 4, 1928 [*Isler & Guye v. United States*], made hats, bonnets, and hoods such as Panamas when woven directly from the raw material, dutiable at 25 per cent ad valorem, and when made from the intermediary stage such as leghorns, dutiable at 35 per cent ad valorem. Since then the manufacturers of straw hats in the United States have adjusted their costs to the 25 per cent ad valorem duty on a large part of body hats imported in the raw state. *It is now our desire that a uniform rate of 25 per cent be applied against all body hats imported in the raw state.* [Italics ours.]

The revision of paragraph 1406 of the Tariff Act of 1922 proposed by said committee, insofar as is here pertinent, appears on page 7201 of said volume and reads as follows:

PAR. 1406 (A). Braids, plaits, laces, and willow sheets or squares, composed wholly or in chief válue of straw, chip, paper, grass, palm leaf, willow, osier, rattan, real horsehair, Cuba bark, or manila hemp, suitable for making or ornamenting hats, bonnets, or hoods, not bleached, dyed, colored, or stained, 15 per centum ad valorem; bleached, dyed, colored, or stained, 20 per centum ad valorem.

 *  *  *  *  *  *  *

PAR. 1406. (C) Hats, bonnets, and hoods, composed wholly or in chief value of straw, chip, paper, grass, palm leaf, willow, osier, rattan, real horsehair, cuba bark, or manila hemp, whether wholly or partly manufactured, but not blocked or trimmed, 25 per centum ad valorem; blocked or trimmed, $4 per dozen and 50 per centum ad valorem.

It will be observed that the descriptive portion of the recommended revision above-quoted is identical with the descriptive portion of that portion of paragraph 1504 of the Tariff Act of 1930, with which we are here concerned, except that "Braids, plaits, * * * wholly or in chief value of ramie" and "Hats, .* * * composed wholly or in chief value of * * * ramie" are included in said paragraph, but were not included in the recommended change. Inasmuch as it appears that one of the reasons for proposing said language by "The Hat Institute," was to include therein all hats composed wholly or in chief value of straw, chip, paper, grass, palm leaf, willow, osier, real horsehair, cuba bark, or manila hemp, whether in the form of raw material or in the form of braids, plaits, laces, and willow sheets or squares, it would seem that in adopting said language Congress intended that it should have the same meaning as the amendment proposed by the Tariff Commission hereinbefore set forth.

For this reason, appellant's argument that the failure of Congress to adopt the amendment proposed by the Tariff Commission signifies that Congress intended the construction now urged by appellant has no force.

Moreover, appellant contends that under paragraph 1504, *supra*, Congress intended to exclude from the provision (b) not only hats such as are here involved, but also hats composed of braids, plaits, laces, and willow sheets, wholly or in chief value of straw, etc., which were included in paragraph 1406 of the Tariff Act of 1922. In other words, appellant contends that it was the intention of Congress to place a higher rate of duty upon hats made directly from the raw material, if bleached, dyed, colored or stained, than upon such hats made from braids, plaits, etc., composed of the same raw material.

Appellant's construction would thus create an anomalous situation with respect to the duty upon hats, which should be avoided if any other reasonable interpretation is possible. However, we think it

is sufficiently clear from what has been hereinbefore said that when Congress, in enacting paragraph 1504 (b), modified the provisions of paragraph 1406 of the Tariff Act of 1922 relating to the same general subject, it intended, in view of the decision in the case of *Isler & Guye* v. *United States, supra,* to include in the paragraph hats which were excluded by that decision, and that it was its intention to include therein hats whether made directly from the substances named in the paragraph or made from articles wholly or in chief value of such substances.

Furthermore, in the absence of any contrary intent of Congress, as shown by the legislative history of paragraph 1504, *supra,* it is our opinion that the proper construction of the provision under consideration requires the inclusion therein of such hats as are here involved.

In the case of *Curtis & Von Bernuth Mfg. Co.* v. *United States,* 22 C. C. P. A. (Customs) 651, T. D. 47633, we said:

The words "made of", in a tariff sense, generally mean made in chief value of a designated material, although the context of a statute may require that they be interpreted to mean made substantially wholly of such material. And the words "made of", "composed of", "manufactures of", and "manufactured of" are frequently used interchangeably in tariff statutes.

It is true, as appellant asserts, that the term "composed of" is not now frequently used in tariff statutes. The common term now used is "wholly or in chief value of" which, in our opinion, has the same meaning as the term "composed wholly or in chief value of." Therefore, if appellant's construction of the involved provision "composed wholly or in chief value of" be adopted, and the involved hats should therefore be excluded from the paragraph, it would likewise be necessary to similarly construe many other provisions of the Tariff Act of 1930. Illustrative of this statement is paragraph 1115 of the wool schedule which provides for clothing "wholly or in chief value of wool."

It is a matter of common knowledge that clothing is usually made from cloth, and the cloth is made from yarn. Wool has a separate tariff classification, as has yarn made from wool and cloth made from such yarns.

We do not think it would seriously be contended by anyone that clothing would not be dutiable under said paragraph because of the intervening processes of manufacture from wool to clothing.

Like observations could be made respecting many other paragraphs of said tariff act.

Moreover, appellant admits that the involved hats are composed of a particular kind of paper. Its brief states:

The instant hats are composed of twisted coated strands united by a process of weaving. The parts of which the hats are composed are twisted coated strands of *paper* and not mere paper. [Italics ours.]

The brief further states:

If we break down one of the imported hats into its component parts we find not paper but twisted coated strands, readily discernible as such.

The sentence last quoted would have been more nearly correct if it had included the word "paper" as in the first quotation above, in which case the sentence would read: "If we break down one of the imported hats into its component parts we find not paper but twisted coated strands *of paper* readily discernible as such."

It seems to us that appellant's admission, which is in accord with the facts, that the involved hats are made of a particular kind of paper, viz, twisted coated strands of paper, really concludes the subject. Congress was concerned with the original material of which the hats were composed, and so far as paragraph 1504 (b) is concerned, not with the manufacturing process which the original material went through before being made into hats.

Appellant cites, in support of its contentions, the case of *United States* v. *Rietmann Pilcer Co.*, 21 C. C. P. A. (Customs) 413, T. D. 46942, wherein it was held that purses composed in chief value of metal thread, and assessed as articles composed in chief value of metal under paragraph 1527 of the Tariff Act of 1930, were dutiable under paragraph 385 as "articles made wholly or in chief value of * * * metal thread."

If said tariff act contained a provision for articles made wholly or in chief value of twisted coated strands of paper, then our decision in said case would be in point, but in the absence of such a provision it has no application.

Appellant contends that "When the manufacturer of the hats at bar first started to form a hat, he started not with paper but with twisted coated strands." It will be noted that the stipulation states that the manufacture begins with cutting rolls or sheets of colored paper into strands.

Finally, appellant's brief states:

The imported hats are manufactures of which paper is the component material of chief value.

We agree with this statement, and if it were not for the more specific provision in paragraph 1504 (b) for hats composed wholly or in chief value of paper, they would be dutiable under paragraph 1413 as manufactures of paper.

In the case of *Edward M. Poons Co. of Kobe, Inc.* v. *United States*, *supra*, we said:

If you start with paper and finish with an article in which paper is the component material of chief value, it is immaterial if in the process of manufacturing the article a completely manufactured article, which is in the form of material for future manufacturing efforts, results.

It was the language above-quoted upon which the trial court principally relied in arriving at its conclusion that appellant's protest should be overruled.

While we do not disagree with the court as to the applicability in the case at bar of the quoted language, we do not find it necessary to hold that the case quoted from is controlling of our decision here.

For the reasons herein stated, the judgment appealed from is *affirmed*.