JOHN V. CARR & SON, INC. *v.* UNITED STATES (No. 5013) [1]

United States Court of Customs and Patent Appeals, June 8, 1960

*John C. Ray* (*Arthur R. Martoccia* of counsel) for appellant.

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*,

[1] C.A.D. 747.

Chief, Customs Section (*Alfred A. Taylor, Jr.,* and *Richard H. Welsh,* trial attorneys, of counsel) for the United States.

[Oral argument April 5, 1960, by Mr. Martoccia and Mr. Welsh]

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

MARTIN, Judge, delivered the opinion of the court:

The sole issue in this case is whether certain merchandise invoiced and entered as "Wood Pulp Insulating Board Strips" is pulpboard cut into shapes such as strips (par. 1413) or pulpboard, not finished or cut into shapes for boxes or other articles (par. 1402) to which a lower rate of duty attaches. The Customs Court overruled the importer's protest to the classification of the goods under paragraph 1413, and it is from that judgment that this appeal is taken. The competing provisions are:

Paragraph 1402 (as modified by T.D. 52373 and T.D. 52462)

Paper board, wallboard, and pulpboard, including cardboard (but not including leather board or compress leather, and except strawboard, solid fiber shoe board and all counter board, and pulpboard in rolls for use in the manufacture of wall board), not plate finished, supercalendered or friction calendered, laminated by means of an adhesive substance, coated, surface stained or dyed, lined or vat-lined, embossed, printed, decorated or ornamented in any manner, nor cut into shapes for boxes or other articles and not specially provided for: * * *

Paragraph 1413 (as modified by T.D. 51802)

Papers and paper board and pulpboard, including cardboard and leatherboard or compress leather, embossed, cut, die-cut, or stamped into designs or shapes, such as initials, monograms, lace, borders, bands, strips, or other forms, or cut or shaped for boxes or other articles, plain or printed, but not lithographed, and not specially provided for * * *.

The imported merchandise is strips cut from sheets of waterproof pulpboard. The strips are $1\frac{1}{8}''$ wide, $\frac{1}{2}''$ or $\frac{5}{8}''$ thick and $48''$ or $72''$ long, which, after importation, are used principally as core stock in the manufacture of flush doors, but which, to be useful for that purpose, must be further reduced in length to fit intermediate the frames of those doors. The function of core stock is to provide more solid rigid nonwarping flush doors. It is also claimed to have an insulating and a waterproofing effect.

The Customs Court, in overruling the protest, found that an article's identity as a strip derives solely from its dimensions and stated that

The instant articles have been deliberately brought to the shape of strips by one of the processes [cutting] outlined * * * in paragraph 1413, * * * and they are, therefore, literally provided for therein.

---

[1] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell,* pursuant to provisions of Section 294(d), Title 28, United States Code.

The case of *Freund Mayer & Co., Inc.* v. *United States*, 39 CCPA 123, C.A.D. 474, was interpreted not to hold that only finished articles are encompassed by the portion of paragraph 1413 here under consideration; therefore, the fact that the imported strips had to be diminished in length to be used for their intended purpose was not controlling.

It is appellant's position that the portion of paragraph 1413 under consideration encompasses only finished articles and not material which requires further processing after importation to fit it for its ultimate purpose. The imported strips are said to be merely material, and not finished articles, because they must be reduced in length, and sometimes in width, before they are ready for use as core members in flush doors. Therefore, paragraph 1402, it is submitted, is the appropriate provision under which to assess the goods.

The Government contends that the imported strips are finished articles and not material, the only thing done to them after importation being to fit them for use in the manufacture of doors, and that they are "strips" within the purview of paragraph 1413.

There being no issue of commercial meaning in this case, it is our function to attribute the common meaning to the word "strip." Funk & Wagnall's New Standard Dictionary, 1931, defines the word "strip" as "1. A narrow piece comparatively long; as a *strip* of cloth, board, or land." In this case we are dealing with pulpboard imported in pieces 1⅛″ wide, ½″ or ⅝″ thick and 48″ or 72″ long which are invoiced by the manufacturer-exporter as "PULP INSULATING BOARD STRIPS ([9]/8″ x ½″ x 48″ x 500 per bundle $11.50 ea.;)" "PULP INSULATING BOARD STRIPS 1⅛″ x ⅝″ x 48″ x 400 per bdle $10.00 ea.;" "Wood Pulp Insulating Board Strips ⅜ x ⅝ x 72″ (300 ea.) [per bundle] $11.00;" "Wood Pulp Insulating Board Strips ⅜ x ⅝ x 72″ (300 ea.) [per bundle] $11.00;" "Wood Pulp Insulating Board Strips ⅜ x ⅝ 72″ (300 ea.) [per bundle] $11.50." The merchandise when manufactured is pressed into sheets 12⅓′ x 4⅓′, "then cut to the various sizes required by the customers" according to the President and General Manager of the manufacturing firm.

Importer here designated the size strips it desired and the merchandise was imported in that condition. Cutting those strips into shorter lengths was the only step necessary to make them suitable for use in the manufacture of the importer's doors.

Appellant's contention that paragraph 1413 refers only to finished articles, and not to manufactured objects to be used in finishing articles, is not borne out by the very wording of the paragraph itself which reads: "pulpboard * * * cut * * * into * * * shapes, such as * * * borders, * * * strips, or other forms, *or cut or shaped for boxes or other articles* * * *." [Emphasis ours.] "Borders" and "strips" as well as pulpboard "cut or shaped for boxes or other articles" by

their very nature indicate a usage in the manufacture of other articles. Even if appellant were correct in urging that the phraseology of this paragraph embraces only finished articles, a conclusion with which we do not agree, the imported strips are completely manufactured, finished articles requiring only shortening of their length to use in the doors.

Appellant argues further that the legislative history of paragraph 1413 requires the invocation of the principle of *ejusdem generis* and since the imported strips are not of the same genus as the initials, monograms and lace, which are all alleged to be finished articles, the paragraph does not apply to those strips. We do not agree with this contention. Paragraph 415 of the Tariff Act of 1909, which is quite similar to paragraph 1413, read as follows:

* * * That paper embossed, or cut, die-cut, or stamped into designs or shapes, such as initials, monograms, lace, borders, bands, strips, or other forms, or cut or shaped for boxes, plain or printed but not lithographed, and not specially provided for in this section, shall be dutiable at thirty-five per centum ad valorem; * * * .

However, the successor paragraph, par. 332 of the 1913 act, did not include "bands" and "strips." Our predecessor court, in the case of *Kupfer Bros. Co.* v. *United States,* 7 Ct. Cust. Appls. 86, T.D. 36423, which involved metal coated paper strips about 2½ feet long and ¼ inch wide, stated in interpreting that paragraph:

But what seems to us of more significance in this paragraph 332 than the point made by importers' counsel is that the paragraph as it appeared in 1909 provided for "paper embossed, or cut, or die-cut, or stamped into designs or shapes, such as initials, monograms, lace, borders, bands, strips, or other forms," while it will be noted that the very words which would bring the present importation within the terms of this paragraph, namely, "bands and strips," have been stricken out of the new legislation. It must be assumed that there was some purpose in this and that the paragraph *ought now* to be restricted to such forms as are *ejusdem generis* in the strictest sense with the shapes or designs named, and the strong inference is that the words omitted were not believed to be of that class. * * * [Emphasis added.]

However, in the case of *Freund Mayer & Co., Inc.,* supra, our court had this to say with reference to the above quotation from the *Kupfer* case:

From the foregoing it is clear that if paragraph 332 of the 1913 act had contained the words "bands" and "strips" this court, upon the issues there presented, would have held the merchandise involved classifiable under that portion of the paragraph claimed by the importer and there would have been no reason for invoking the *ejusdem generis* rule.

·In paragraph 1313 of the Tariff Act of 1922 the words "bands" and "strips" were restored in the same order in which they had appeared in the proviso to paragraph 415 of the 1909 act, *supra,* and the duty rate upon articles falling within the proviso was fixed at 30 per centum ad valorem. This was reenacted in paragraph 1413, *supra,* of the Tariff Act of 1930—the paragraph here involved.

We agree with this conclusion and believe it applicable to the case at bar.

. Appellant further argues that the provisions of paragraph 1413 here involved refer only to decorative articles and therefore the merchandise at bar would be excluded. Although the court in the *Kupfer Bros. Co.* case, to further substantiate its position that the rule of *ejusdem generis* was applicable to paragraph 332 of the 1913 act, went on to say:

In fact these strips are merely articles of utility, in a sense decorative, it is true, but they are used for tying up parcels, a use to which ordinary twine might be devoted, and when once used serve no other purpose, which is not true of the other shapes named, namely, initials, monograms, lace, and borders, which are supposed to enjoy some permanence of use for decorative purposes. We think that this change in the paragraph is in itself sufficient to exclude the importation here involved from its terms.

appellant's contention is not tenable since the 1922 Act reinstated "strips" and "bands" and the words continued in the 1930 Act. Furthermore with respect to "strips," the court stated that "strips" were more in the nature of articles of utility rather than decorative objects which is further evidence that Congress desired to eliminate the possibility that the provisions would apply only to decorative articles.

We believe the Collector acted correctly in classifying the merchandise at bar under the provisions of paragraph 1413.

We therefore *affirm* the decision of the Customs Court.