(C. D. 1280)

FREUND MAYER & CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided October 25, 1950)

*Barnes, Richardson & Colburn* (*Eugene F. Blauvelt* of counsel) for the plaintiff. *David N. Edelstein*, Assistant Attorney General (*Arthur R. Martoccia*, special attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: Certain paper napkins, imported from England, were classified by the collector of customs at the port of New York as manufactures of paper, not specially provided for, and assessed with duty at the rate of 35 per centum ad valorem, pursuant to the provisions of paragraph 1413 of the Tariff Act of 1930. A protest was duly filed against such classification and assessment, claiming that said merchandise is properly dutiable at only 30 per centum ad valorem, as paper, embossed, cut, die-cut, or stamped into designs or shapes, which is likewise provided for in said paragraph 1413.

The pertinent portions of the paragraph in question read as follows:

Papers and paper board and pulpboard, including cardboard and leatherboard or compress leather, embossed, cut, die-cut, or stamped into designs or shapes, such as initials, monograms, lace, borders, bands, strips, or other forms, * * * all the foregoing, 30 per centum ad valorem; * * * manufactures of paper, or of which paper is the component material of chief value, not specially provided for, all the foregoing, 35 per centum ad valorem; * * *.

At the trial, samples of the merchandise at issue were received in evidence as plaintiff's exhibits 1 and 2. Counsel for the respective parties hereto thereupon entered into the following stipulation:

It is further stipulated between counsel that the items represented by Exhibits One and Two are paper napkins, and that said samples are printed but not lithographed, and were manufactured in the following manner: Rolls of tissue paper, approximately twenty-two inches wide, were unrolled through a machine which printed the designs appearing on the exhibits, and, by means of dies, cut or stamped out the individual napkins, and at the same time embossed the borders of the same.

It was further stipulated that the exhibits before the court represent articles that are complete and ready for use.

It is the contention of the plaintiff that the merchandise here in controversy falls squarely within the literal meaning of the provision of paragraph 1413, *supra,* for papers, die-cut or stamped into shapes; and that it would undoubtedly have been so classified were it not for the adverse decision of this court in the case of *Winter Wolff & Co.* v. *United States,* 61 Treas. Dec. 425, T. D. 45478. It is further claimed that the collector should have disregarded said decision for the reason that it has been repudiated by the Court of Customs and Patent Appeals in the cases of *United States* v. *W. X. Huber Co.,* 30 C. C. P. A. (Customs) 183, C. A. D. 231, and *United States* v. *H. Reeve Angel & Co., Inc.,* 33 C. C. P. A. (Customs) 114, C. A. D. 324.

Counsel for the Government asserts that the napkins before us are not *ejusdem generis* with any of the *eo nomine* designations in the provision for papers, cut to shape or design; that, as they are completely manufactured articles, they are more than paper, cut to shape, and are properly covered by the provision in paragraph 1413, *supra,* for manufactures of paper. It is also contended that the holding in the case of *Winter Wolff & Co.* v. *United States, supra,* has not been repudiated nor overruled by any subsequent decision.

The provision for papers, embossed, cut, die-cut, or stamped into designs or shapes, was initially enacted as a proviso to paragraph 415 of the Tariff Act of 1909. Except for the elimination of the words "bands and strips" in paragraph 332 of the 1913 act, and the restoration of those words in subsequent tariff legislation, there has been no substantial change in the language of the paragraph in question.

In the case of *United States* v. *W. X. Huber Co., supra,* which involved essentially a contest between the portion of said paragraph 1413 providing for papers, cut into designs or shapes, and the pro-

vision in paragraph 1409 of the Tariff Act of 1930, for filtering paper, the merchandise being filtering paper in the form of circular disks, the paragraph here in question was subjected to an exhaustive analysis, especially with respect to its tariff history. The court there found, agreeably to its earlier conclusion in the case of *Knauth, Nachod & Kuhne* v. *United States*, 3 Ct. Cust. Appls. 183, T. D. 32465, that the proviso to paragraph 415 of the Tariff Act of 1909 was undoubtedly incorporated in that act to overcome the effects of the decision of the Circuit Court of Appeals, Second Circuit, in the case of *Hamilton et al.* v. *United States*, 167 Fed. 796.

In the said *Hamilton* case, there were involved certain tops or doilies, made of plain paper, the lace-like effects of which had been created by a single stamping operation. They were used for placing on tops of boxes of candy, raisins, fruit, or the like, or for putting under finger bowls. The court, in holding that such merchandise did not fall within the provision of paragraph 407 of the Tariff Act of 1897 for manufactures of paper, stated:

* * * The plain paper might just as well be used for the same purpose, only it would not be so attractive. Except for the pleasing effect, it has been in no wise changed. It is still paper. It has not been made into an article having another use, as it would if manufactured into an envelope, a bag, or a box.

This and certain other considerations to which we shall subsequently refer, led the court in the *Huber* case, *supra*, to the conclusion that disks cut from filtering paper were more specifically provided for as paper, cut into designs or shapes, than as filtering paper.

It is urged by the plaintiff that if a doily was not a manufacture of paper, neither is a paper napkin, and that if paper doilies and filter paper disks are now properly classifiable as paper, cut into designs or shapes, the same principle should control the classification of paper napkins.

The fallacy of that argument lies in the assumption that, since a doily is not a manufacture of paper, the same is true of a paper napkin. It is to be noted that the court in the *Hamilton* case, *supra*, drew a distinction between paper doilies which it held to be paper, and certain articles which are clearly manufactures of paper, such as envelopes, bags, and boxes. It based that distinction upon the fact that the doilies, although enhanced in appearance, were not made adaptable to any new or different use than the paper from which they had been stamped, whereas it was obvious that envelopes, bags, and boxes, although composed of paper, were used for purposes other and different from the paper of which they were composed.

To be sure, the decision contains no mention of paper napkins. But it cannot be denied that a paper napkin is an article which has been adapted for a particular purpose, and that its use for that purpose differs greatly from the uses to which paper, as such, is suited.

Moreover, it appears that for a very long period·of time and under many different tariff acts, napkins made of tissue or creped paper have been consistently classified as manufactures of paper. See *Morimura Bros.* v. *United States*, 172 Fed. 248, and cases cited therein, and *Winter Wolff & Co.* v. *United States, supra.*

Adverting now to the further considerations upon which the decision in the *Huber* case, *supra*, was based, we quote the following from the court's opinion:

Paragraph 332 of the Tariff Act of 1913 read as follows:

Papers or cardboard, cut, die cut, or stamped into designs or shapes, such as initials, monograms, lace, borders, or other forms, and all post cards, not including American views, plain, decorated, embossed, or printed, except by lithographic process, and all papers and manufactures of paper or of which paper is the component material of chief value, not specially provided for in this section, 25 per centum ad valorem.

It will be observed that the first part of this paragraph is very similar to that portion of paragraph 1413, *supra*, except that it does not contain the words "bands, strips" as did the proviso to paragraph 415 of the Tariff Act of 1909.

The construction of said paragraph 332 was considered by this court in the case of *Kupfer Bros. Co.* v. *United States*, 7 Ct. Cust. Appls. 86, T. D. 36423. The merchandise there involved consisted of metal-coated paper cut into strips each about 2½ feet long and one-quarter of an inch wide.

The court held that the merchandise should be classified as completely manufactured articles under paragraph 324 of said act of 1913 and not under paragraph 332 as claimed by the importer.

In considering the applicability of paragraph 332 the court stated:

But what seems to us of more significance in this paragraph 332 than the point made by importers' counsel is that the paragraph as it appeared in 1909 provided for "paper embossed, or cut, or die-cut, or stamped into designs or shapes, such as initials, monograms, lace, borders, bands, strips, or other forms," while it' will be noted that the very words which would bring the present importation within the terms of this paragraph, namely, "bands and strips," have been stricken out of the new legislation. It must be assumed that there was some purpose in this and that the paragraph ought now to be restricted to such forms as are *ejusdem generis* in the strictest sense with the shapes or designs named, and the strong inference is that the words omitted were not believed to be of that class. In fact these strips are merely articles of utility, in a sense decorative, it is true, but they are used for tying up parcels, a use to which ordinary twine might be devoted, and when once used serve no other purpose, which is not true of the other shapes named, namely, initials, monograms, lace, and borders, which are supposed to enjoy some permanence of use for decorative purposes. We think that this change in the paragraph is in itself sufficient to exclude the importation here involved from its terms.

That part of paragraph 1413 here considered is identical with the first part of paragraph 1313 of the Tariff Act of 1922 and it will be noted that the words "bands, strips" found in the proviso to paragraph 415 of the Tariff Act of 1909, and omitted in paragraph 332 of the Tariff Act of 1913 were restored in the corresponding paragraph of the Tariff Act of 1922 and are now contained in paragraph 1413, *supra.*

Therefore, the observations of the court in the case of *Kupfer Bros. Co.* v. *United States*, *supra*, regarding the doctrine of *ejusdem generis* as applied to the merchandise there involved are not applicable to paragraph 1413 of the Tariff Act of 1930, and we are clearly of the opinion that the circular disks here involved are *ejusdem generis* with paper in the form of bands and strips.

It is evident from the foregoing that while the strict rule of *ejusdem generis* which was applied in the case of *Kupfer Bros. Co.* v. *United States*, 7 Ct. Cust. Appls. 86, T. D. 36423, for the reasons therein stated, was necessarily relaxed because of the change in law, nevertheless, the rule itself was invoked to sustain the court's conclusion. Having found that the circular disks before it were *ejusdem generis* with paper in the form of bands and strips, the court was of opinion that, therefore, they were properly classifiable as paper, cut into shape, within the meaning of paragraph 1413, *supra.*

Applying the principle thus sanctioned by our appellate court, we find that the paper napkins here in question are not *ejusdem generis* with any of the items *eo nomine* specified in that portion of paragraph 1413 within which plaintiff seeks to have its merchandise classified.

Nor do we find any expression in either the *Huber* or *Reeve Angel* cases, *supra*, which directly or by implication suggests that the decision in the case of *Winter Wolff & Co.* v. *United States*, *supra*, has been repudiated.

In view of the foregoing, we hold that the instant merchandise was properly assessed with duty at the rate of 35 per centum ad valorem, pursuant to the provision in paragraph 1413 of the Tariff Act of 1930 for manufactures of paper, not specially provided for. All claims in the protest are therefore overruled.