FREUND MAYER & CO., INC. *v.* UNITED STATES (No. 4666)[1]

United States Court of Customs and Patent Appeals, January 29, 1952

*Barnes, Richardson & Colburn (Eugene F. Blauvelt* and *Hadley S. King* of counsel) for appellant.

*David N. Edelstein,* Assistant Attorney General (*Richard F. Weeks* and *Alfred A. Taylor, Jr.,* special attorneys, of counsel), for the United States.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Associate Judges

GARRETT, Chief Judge, delivered the opinion of the court:

Appellant seeks reversal of the judgment of the Second Division of the United States Customs Court, entered in conformity with its decision, C. D. 1280, 25 Cust. Ct. 166, overruling appellant's protest against the classification of and duty assessment upon paper napkins made by the Collector of Customs at the port of New York City. The merchandise appears to have been entered October 2, 1947. It is subject to the Tariff Act of 1930 as originally enacted, none of the amendments subsequently made by trade agreements having application to the particular importation involved. Paragraph 1413 of the act is involved here.[2]

---

C. A D. 474.

[2] Par. 1413. Papers and paper board and pulpboard, including cardboard and leatherboard or compress leather, embossed, cut, die-cut, or stamped into designs or shapes, such as initials, monograms, lace, borders, bands, strips, or other forms, or cut or shaped for boxes or other articles, plain or printed, but not litho-

It was agreed by counsel for the respective parties that the merchandise is represented by Exhibits One and Two, and

* * * further stipulated between counsel that the items represented by Exhibits One and Two are paper napkins, and that said samples are printed but not lithographed, and were manufactured in the following manner: Rolls of tissue paper, approximately twenty-two inches wide, were unrolled through a machine which printed the designs appearing on the exhibits, and, by means of dies, cut or stamped out the individual napkins, and at the same time embossed the borders of the same.

During the course of the proceedings before the Customs Court, it was stipulated additionally, or agreed, that the exhibits "represent articles that are complete and ready for use."

.The collector's classification and duty assessment were based upon the provision in paragraph 1413 of the Tariff Act of 1930 reading:

* * * manufactures of paper * * * not specially provided for, * * * 35 per centum ad valorem.

Importer's claim, as stated in its brief before us, is for duty assessment at the rate of 30 per centum ad valorem under that phraseology of paragraph 1413 reading:

Papers * * * embosses, cut, die-cut, or stamped into designs or shapes, * * *.

Consideration of the various aspects of the case require study of the phraseology of the paragraph substantially as set forth in the brief on behalf of the Government:

* * * Papers * * * embossed, cut, die-cut, or stamped into designs or shapes, such as initials, monograms, lace, borders, bands, strips, or other forms * * *, plain or printed, but not lithographed, and not specially provided for; * * * all the foregoing, 30 per centum ad valorem; * * *; * * * manufactures of paper * * * not specially provided for, * * * 35 per centum ad valorem.

As hereinafter will appear, no one of the several decided cases cited and discussed in the briefs on behalf of the respective parties is on all fours with the case at bar, and we have found no case decided by this court, or by any other court, which properly may be regarded as controlling here.

The Customs Court approved the view, urged before it by counsel for the Government, that resort should be had to the rule of *ejusdem*

graphed, and not specially provided for; paper board and pulpboard, including cardboard and leatherboard or compress leather, plate finished, super-calendered or friction calendered, laminated by means of an adhesive substance, coated, surface stained or dyed, lined or vat-lined, embossed, printed, or decorated or ornamented in any manner; press boards and press paper, all the foregoing, 30 per centum ad valorem; test or container boards of a bursting strength above sixty pounds per square inch by the Mullen or the Webb test, 20 per centum ad valorem; stereotype-matrix mat or board, 35 per centum ad valorem; wall pockets, composed wholly or in chief value of paper, papier-mache or paper board, whether or not die-cut, embossed, or printed lithographically or otherwise; boxes, composed wholly or in chief value of paper, papier-mache or paper board, and not specially provided for; manufactures of paper, or of which paper is the component material of chief value, not specially provided for, all the foregoing, 35 per centum ad valorem; tubes wholly or in chief value of paper, commonly used for holding yarn or thread, if parallel, 1 cent per pound and 25 per centum ad valorem; if tapered, 3 cents per pound and 35 per centum ad valorem.

*generis* in determining whether the merchandise conforms to appellant's claim, and held, in substance, that the paper napkins involved "are not *ejusdem generis* with any of the items *eo nomine* specified in that portion of paragraph 1413 within which plaintiff [appellant here] seeks to have its merchandise classified."

The view that the rule of *ejusdem generis* should be invoked seems to have been predicated upon what was said by this court in its decision in the case of *Kupfer Bros. Co.* v. *United States*, 7 Ct. Cust. Appls. 86, T. D. 36423, 30 Treas. Dec. 846, which arose under the 1913 tariff act.

Counsel for the Government argue in support of the Customs Court's view in respect to the necessity of applying the rule of *ejusdem generis* and in support of its conclusion based upon that view.

Determination of the case, in our opinion, renders it proper to refer to some other judicial decisions bearing upon the subject matter which are cited and discussed in the briefs before us.

The first of such decisions in point of time was rendered January 12, 1909, by the United States Circuit Court of Appeals, Second Circuit, in the case of *Hamilton et al.* v. *United States*, 167 Fed. 796, T. D. 29519. The Court of Appeals there reversed the judgment of the Circuit Court sustaining the judgment of the United States Board of General Appraisers (now the United States Customs Court) approving the collector's classification of certain paper doilies stamped from plain paper into a shape with lace-like effects as "manufactures of paper." The case arose under the 1897 tariff act.

Pertinent paper paragraphs of that act read:

402. Paper hangings and paper for screens or fireboards, and all other paper not specially provided for in this Act, twenty-five per centum ad valorem; * * *.

403. Books of all kinds, including blank books and pamphlets, and engravings bound or unbound, photographs, etchings, maps, charts, music in books or sheets, and printed matter, all the foregoing not specially provided for in this Act, twenty-five per centum ad valorem.

407. Manufactures of paper, or of which paper is the component material of chief value, not specially provided for in this Act, thirty-five per centum ad valorem.

There was no provision in the 1897 act similar to that of the 1930 act under which appellant here claims. The collector classified the merchandise as "manufactures of paper" under paragraph 407, *supra*. The protest sought classification either as "printed matter," evidently under paragraph 403, *supra*, or, in the alternative, as "all other paper not specially provided for," under paragraph 402, *supra*. Both paragraphs 402 and 403 provided a duty rate of 25 per centum ad valorem, and the Circuit Court of Appeals, while holding that the articles there involved were not manufactures of paper provided for in paragraph 407, *supra*, did not specify either paragraph 402 or paragraph 403 as *the* paragraph applicable in making classification.

In the course of its decision the Circuit Court of Appeals said:

The importations are apparently the same as those before the Circuit Court in *United States* v. *Hensel*, 152 Fed. 578, a decision which was not appealed. As shown by the samples, the articles are paper. All of them have been stamped from plain paper, by a single operation, at one and the same time, into shape with lace-like effects. They are used for placing on tops of boxes or baskets of candy, raisins, fruit, or the like, to improve their appearance, or for putting under finger bowls; and hence they are called "tops" or "doilies." The plain paper might just as well be used for the same purpose, only it would not be so attractive. Except for the pleasing effect, it has been in no wise changed. It is still paper. It has not been made into an article having another use, as it would if manufactured into an envelope, a bag, or a box. * * *

* * * The government relies upon *Kraut* v. *United States* (C. C.), 134 Fed. 701, affirmed by this court 142 Fed. 1037, 71 C. C. A. 684. The articles in that case were not merely paper. They had been manufactured into a distinct article— bags—for use as such, and were dutiable as manufactures of paper; the printing on them being merely incidental.

In view of the character of the merchandise (paper bags in which goods were to be packed and sold) involved in the *Kraut* case referred to in the immediately foregoing decision, we are of the opinion that the decision in the *Kraut* case has no relevancy here. It arose under the 1897 tariff act. The *Hensel* case also arose under that act. The merchandise in the latter case was stated by the Circuit Court of Appeals to be "apparently the same" as that in the *Hamilton et al.* case, *supra*, and it is reasonable to suppose that it would have been decided the same way had it reached that court, but it was not appealed from the Circuit Court. No reliance seems to be placed upon it by counsel for either party in the instant case.

The Government seems to rely, to some extent at least, upon the decision of the United States Circuit Court, Second Circuit, in a case styled *Morimura Bros.* v. *United States*, rendered May 21, 1908, and reported in 172 Fed. 248, T. D. 29163, 16 Treas. Dec. 46. The Circuit Court there affirmd the decision of the Board of General Appraisers (now the United States Customs Court) approving the classificalion of the Collector of Customs of certain merchandise, described in the decision of the board as "napkins made of crinkled crepe paper and ornamented with designs in colors, stenciled and stamped or printed thereon from blocks of wood."

The case, like that of *Hailton et al.*, *supra*, arose undar the 1897 tariff act, and the collector classified the napkins under paragraph 407, *supra*, of that act as "manufactures of paper." The protestant sought their classification as "printed matter" under paragraph 403, *supra*, of the act.

The case is cited in the decision of the Customs Court now before us on appeal in support of its statement reading:

* * * it appears that for a very long period of time and under many different tariff acts napkins made of tissue or creped paper have been consistently classified as manufactures of paper.

It is suggested at one point in the brief for appellant that the decision rendered May 21, 1908, in the *Morimura Bros.* case, *supra*, was overruled in effect by the later decision rendered January 12, 1909, in the *Hamilton et al.* case, *supra*. It is insisted on behalf of the Government that the later decision "in no way overrules the holding" in the earlier, "either in fact or in effect," and it is contended that the earlier "is authority for holding that the [here] involved paper napkins are properly dutiable as manufactures of paper."[3]

We are not convinced that the decision in the *Hamilton et al.* case, *supra*, had the effect of overruling that in the *Morimura Bros.* case, *supra*, but we do not regard the *Morimura Bros.* decision as controlling here.

The merchandise (paper napkins) involved in the *Morimura Bros.* case, *supra*, was not the same as that (doilies) involved in the *Hamilton et al.* case, *supra*, nor is the merchandise here involved the same as that involved in the *Hamilton et al.* case, *supra*. Whether it is the same type of napkins as those involved in the *Morimura Bros.* case, *supra*, we are unable to determine definitely, but we do not regard that as a material matter.

It is quite possible, perhaps probable, that if the *Morimura Bros.* case, *supra*, had been carried before the Circuit Court of Appeals, Second Circuit, its decision would have been the same as that in the *Hamilton et al.* case, *supra*, but that is merely a surmise.

In any event, the courts had no occasion, in cases arising under the 1897 tariff act, or, so far as we are advised, under any act prior thereto, to consider phraseology such as that which appellant in the instant case invokes because no such phraseology was used in such acts.

The substance of that phraseology appeared for the first time in a proviso of paragraph 415 of the 1909 tariff act.

The proviso, insofar as here relevant, reads:

\* \* \* *Provided*, that paper embossed, or cut, die-cut, or stamped into designs or shapes, such as initials, monograms, lace, borders, bands, strips, or other forms, or cut or shaped for boxes, plain or printed but not lithographed, and not specially provided for in this section, shall be dutiable at thirty-five per centum ad valorem; \* \* \*.

The case of *Knauth, Nachod & Kuhne* v. *United States*, 3 Ct. Cust. Appls. 183, T. D. 32465, 22 Treas. Dec. 744, which hereinafter is referred to usually as the *Knauth* case, arose under the 1909 act and the merchandise, described in this court's decision as "printed paper

---

[3] The fact that the decision of the Circuit Court in the *Morimura Bros.* case, *supra*, was not published in the Federal Reporter until Vol. 172 was issued, while the later decision of the Circuit Court of Appeals in the *Hamilton et al.* case, *supra*, was published in 167 Federal Reporter, tends to confuse. We find that the *Morimura Bros.* decision was published as T. D. 29163 in 16 Treas. Dec. 46, and a note, following the decision, states "An appeal has been taken to the Circuit Court of Appeals, Second Circuit."

*That appeal, however, was abandoned* and the case was never before the Circuit Court of Appeals. It is possible that the taking of the appeal which was abandoned may have caused the delay in publishing the earlier decision in the Federal Reporter.

advertising cards, with the outline of a picture die-cut into them after the manner of a stencil," was classified by the collector under the proviso, *supra*, duty assessed at 35 per centum ad valorem. The importer made claim for classification as "printed matter" under paragraph 416 of the 1909 act with duty assessment at 25 per centum ad valorem—a paragraph similar in all substantial respects to paragraph 403 of the 1897 tariff act, *supra*.

In the decision sustaining that of the Board of General Appraisers (now the United States Customs Court) overruling the importer's protest and upholding the collector's classification there made, this court did not hold the merchandise to be "manufactures of paper."

It was said in the decision that the proviso was new in tariff legislation; that the litigation relating to the duty on the merchandise involved in the *Hamilton et al.* case, *supra*, had been brought to the attention of Congress in "Notes on Tariff Revision" (an official publication); and that "undoubtedly the proviso to paragraph 415 [of the 1909 act] was incorporated * * * in order that an increased rate of duty over and above that upon paper might be provided for articles such as these [paper advertising cards, with the outline of a picture die-cut into them after the manner of a stencil] which are paper both printed and die-cut."

It should be borne in mind that the effect of the decision in the *Hamilton et al.* case, *supra*, had been to make effective a duty rate of only 25 per centum ad valorem on the articles there involved and that the effect resulted from the holding that the merchandise did not fall within the statutory definition of "manufactures of paper." The decision did not in any way affect the duty rate of 35 per centum ad valorem on articles which *did* fall within the meaning of "manufactures of paper."

The decision in the *Knauth* case, *supra*, as we view it, did not affect the *classification* of "manufactures of paper," other than those which fall within the new provision created by Congress to cover certain types of paper and fixing a rate of duty for such types.

In the case of *United States* v. *Fuld & Co.*, 4 Ct. Cust. Appls. 234, T. D. 33476, 24 Treas. Dec. 852, where the proviso to paragraph 415 of the 1909 tariff act, *supra*, was involved, this court said:

> The language employed in the proviso to paragraph 415 is that of a specific description intended to apply to the therein enumerated articles rather than a general clause modifying other clauses or a catchall residuum clause. * * *

The merchandise involved in that case is described in the court's decision as "post cards, printed, embossed, and sprayed."

In the case of *United States* v. *Wyman & Co.*, 4 Ct. Cust. Appls. 411, 413, T. D. 33851, 25 Treas. Dec. 386, this court, after quoting the foregoing from the decision in the *Fuld & Co.* case, *supra*, said:

> So it was held that the proviso has reference to forms of paper produced by

embossing, cutting, or stamping rather than to completed articles, to some of which any of the processes referred to may have been applied as an additional feature of ornamentation, following in that respect an unpublished opinion of the board (Abstract 24223).

The merchandise involved in the *Wyman* case, *supra*, is described in the decision of this court as "embossed paper ornaments composed in chief value of metal-coated paper," and the opinion of the court states that "the question presented is as to which of the two paragraphs, 411 or 415 [of the 1909 tariff act] more accurately describes the importation in question."

Paragraph 420 of the 1909 tariff act providing for manufactures of paper, etc. was not invoked in either the *Fuld & Co.* case, *supra*, or the *Wyman* case, *supra*.

The substance of the proviso to paragraph 415 of the 1909 tariff act was reenacted as paragraph 332 of the 1913 tariff act with the exception that the words "bands" and "strips" were deleted in the 1913 act and the duty rate was fixed at 25 per centum ad valorem instead of 35 per centum ad valorem.

The case of *Kupfer Bros. Co.* v. *United States*, *supra*, in the decision of which, as has been stated, this court applied the rule of *ejusdem generis* in construing paragraph 332, arose under the 1913 tariff act. The merchandise is described in the decision as consisting of "metal-coated paper cut into strips each about 2½ feet long and one-quarter of an inch wide, embossed with a small ornamental design and with the letters 'P' and 'T'."

The collector assessed duty at 35 per centum ad valorem seemingly classifying the merchandise under paragraph 324 of the 1913 tariff act as articles composed wholly or in chief value of paper wholly or partly covered with metal leaf.

In the decision of this court the position of importer was stated as follows:

The protest makes two claims—first, that if the importation is dutiable under paragraph 324 at all, it should be under the provision for papers wholly or partly covered with metal leaf and not as articles composed wholly or in chief value of such papers. The second and the chief contention is that the articles are dutiable under paragraph 332, * * *.

In applying the rule of *ejusdem generis* it was said:

* * * what seems to us of more significance in this paragraph 332 than the point made by importers' counsel is that the paragraph as it appeared in 1909 provided for "paper embossed, or cut, or die-cut, or stamped into designs or shapes, such as initials, monograms, lace, borders, bands, strips, or other forms," while it will be noted that the very words which would bring the present importation within the terms of this paragraph, namely, "bands and strips," have been stricken out of the new legislation. It must be assumed that there was some purpose in this and that the paragraph ought now to be restricted to such forms as are *ejusdem generis* in the strictest sense with the shapes or designs named, and the strong inference is that the words omitted were not believed to be of that class.

In fact these strips are merely articles of utility, in a sense decorative, it is true, but they are used for tying up parcels, a use to which ordinary twine might be devoted, and when once used serve no other purpose, which is not true of the other shapes named, namely, initials, monograms, lace, and borders, which are supposed to enjoy some permanence of use for decorative purposes. We think that this change in the paragraph is in itself sufficient to exclude the importation here involved from its terms.

From the foregoing it is clear that if paragraph 332 of the 1913 act had contained the words "bands" and "strips" this court, upon the issues there presented, would have held the merchandise involved classifiable under that portion of the paragraph claimed by the importer and there would have been no reason for invoking the ejusdem generis rule.

In paragraph 1313 of the Tariff Act of 1922 the words "bands" and "strips" were restored in the same order in which they had appeared in the proviso to paragraph 415 of the 1909 act, supra, and the duty rate upon articles falling within the proviso was fixed at 30 per centum ad valorem. This was reenacted in paragraph 1413, supra, of the Tariff Act of 1930—the paragraph here involved.

So far as we have been able to find, no case relevant to the issues here presented was before any court under the Tariff Act of 1922; but in the case of United States v. W. X. Huber Co., 30 C. C. P. A. (Customs) 183, C. A. D. 231, an issue was presented which involved paragraphs 1413, 1404, and 1409 of the Tariff Act of 1930.[4]

The merchandise there involved consisted of paper disks. It was invoiced as "coffee filter papers." The collector made the finding that it was paper cut to shape which would have been subject to a duty rate of 30 per centum ad valorem under paragraph 1413 of the act had the collector not held also that it consisted of tissue paper within the meaning of paragraph 1404, and, therefore, subject to duty at the rate of 6 cents per pound and 20 per centum ad valorem, by the reason of the proviso of paragraph 1404. The importer's claim was for classification as filtering paper under paragraph 1409 of the act with duty assessment at 5 cents per pound and 15 per centum ad valorem, and its contention was upheld by the Customs Court.

---

[4] For convenience, the pertinent provisions of paragraphs 1413, 1404, and 1409 are here inserted as quoted in our decision in the Huber case, supra:

Par. 1413. Papers and paper board and pulpboard, including cardboard and leatherboard or compress leather, embossed, cut, die-cut, or stamped into designs or shapes, such as initials, monograms, lace, borders, bands, strips, or other forms, or cut or shaped for boxes or other articles, plain or printed, but not lithographed, and not specially provided for; * * * 30 per centum ad valorem; * * *.

Par. 1404. Papers commonly or commercially known as tissue paper, stereotype paper, and copying paper, india and bible paper, condenser paper, carbon paper, coated or uncoated, bibulous paper, pottery paper, tissue paper for waxing, and all paper similar to any of the foregoing, not specially provided for, colored or uncolored, white or printed, weighing not over six pounds to the ream, and whether in sheets or other form, 6 cents per pound and 20 per centum ad valorem; * * *: Provided, That no article composed wholly or in chief value of one or more of the papers specified in this paragraph shall be subject to a less rate of duty than that imposed upon the component paper of chief value of which such article is made: * * *.

Par. 1409. * * * filtering paper, 5 cents per pound and 15 per centum ad valorem; * * *.

This court, in an elaborate opinion by the late Judge Lenroot in the *Huber* case, *supra*, held, for the reasons there stated, that the observations of the court in the *Kupfer* case, *supra*, regarding the doctrine of *ejusdem generis* as applied to the merchandise in that case were "not applicable to paragraph 1413 of the Tariff Act of 1930, and we are clearly of the opinion that the circular disks here involved are *ejusdem generis* with paper in the form of bands and strips."

We said further:

It appears that the prototype of paragraph 1413, *supra*, found in the proviso of paragraph 415 of the Tariff Act of 1909 was enacted in part for the purpose of subjecting plain or printed paper "cut, die-cut, or stamped into designs or shapes, such as * * * bands, strips, or other forms * * *" to a higher duty than the paper from which the articles were stamped or cut, except as otherwise specifically provided for in that tariff act. This court, in effect, in the case of *Knauth, Nachod & Kuhne* v. *United States, supra*, so held.

We therefore hold that filtering paper is included in the term "paper" as used in paragraph 1413, and that the involved disks are embraced therein.

In conclusion, while we hold upon the record before us that paragraph 1404 has no application to the involved merchandise, and it should have been classified solely under paragraph 1413, appellee has made no such claim in its protest, and therefore it is not entitled to a classification of the merchandise solely under the provisions of paragraph 1413.

In the case of *United States* v. *H. Reeve Angel & Co., Inc.*, 33 C. C. P. A. (Customs) 114, C. A. D. 324, the merchandise involved consisted of "certain disks of filtering paper" which the collector classified under paragraph 1413 of the Tariff Act of 1930, *supra*, duty being assessed at 30 per centum ad valorem.

The importer's claim, which the Customs Court sustained, was for classification under paragraph 1409 with duty at a rate conforming to the Trade Agreement, T. D. 49753, with the United Kingdom, which modified the rate fixed by the paragraph as originally enacted.

So, we had there substantially the same issue as that presented in the *Huber* case, *supra*, except that paragraph 1404 was not involved, and as between the paragraphs at issue (1413 and 1409) we reversed the judgment of the Customs Court and sustained the action of the collector, stating, "we adhere to the law as announced in that [the *Huber*] decision and hold that it is *stare decisis* of the present issue."

Paragraph 1409 is not involved in the instant case. So, we have a situation different from that presented in the *H. Reeve Angel & Co.* case, *supra*.

Under the views expressed in the *Huber* case, *supra*, we reversed the trial court upon the matter of classification but rendered no judgment for the refund of any of the taxes which had been imposed by the collector.

There was no issue in either the *Huber* case, *supra*, or the *H. Reeve Angel & Co.* case, *supra*, involving the provision of paragraph 1413 for "manufactures of paper," which provision is directly and specifi-

cally involved here by reason of the collector's classification. In those cases the collector classified the merchandise under the phraseology which appellant seeks to have applied here, and in both instances this court sustained his classification. While we do not regard those decisions as absolutely controlling here, we do regard them as strongly supporting appellant's classification claim.

Certainly, if, as we there held, the filter paper, cut to a shape which rendered it a completed article ready for its intended use, was *ejusdem generis* with bands and strips, it does no violence to reason to conclude that the paper napkins here involved are *ejusdem generis* with papers, embossed, or papers stamped into shapes, such as borders. Indeed, the stipulation recites, in effect, that in the process of manufacture the individual napkins were cut or stamped and at the same time the borders of the same were embossed by means of dies.

We think it may be questioned fairly whether in this case there exists any necessity for a construction of the involved phraseology of the paragraph by resorting to the rule of *ejusdem generis*. That portion of paragraph 1413 here invoked by appellant specifies six classes of *finished* articles, viz, "initials," "monograms," "lace," "borders," "bands," and "strips," but it also adds *"or other forms,"* and in the same clause provision is made for "[articles] cut or shaped for boxes *or other articles."* (Italics ours.) This latter phraseology would seem to cover material shaped to make finished articles for which *material* the duty rate is fixed at 30 per centum ad valorem. Where the finished articles are boxes they are provided for *eo nomine* at 35 per centum ad valorem, and in the case of finished articles other than boxes they probably would answer the description of manufactures of paper and require duty assessment at 35 per centum ad valorem.

In the brief for the Government much attention has been devoted to the matter of "just what have been determined by this Court to be 'manufactures'." It is contended that this constitutes "the first and decisive matter of importance to be considered in the determination of the issue herein," and a number of cases are cited and discussed.

We think it may be conceded that everything provided for in the Papers and Books Schedule of the Tariff Act of 1930, including, of course, everything in paragraph 1413, *supra*, is a form of manufacture, but we know of no form of paper which exists as a product of nature unless a hornet's nest be so considered. However, the only "manufactures of paper, or of which paper is the component material of chief value," under which the collector's classification was made are those "not specially provided for." It is what often is referred to as a basket clause.

From the legislative history hereinbefore recited, we *think it clear* that the provision, under which appellant's claim was made, was

introduced into customs legislation to provide specially for certain types of paper articles. It seems probable that it was done to meet a decision of a United States Circuit Court of Appeals in a case which arose before this court was created.

However that may have been, it must be borne in mind that the rate of duty assessment does not control classification; on the contrary, classification fixes the duty rate.

Assuming, without holding, that it may have been necessary to construe the phraseology under which appellant claims by resort to the rule of *ejusdem generis*, we feel assured that its claim is well founded and that the trial court erred in not sustaining its protest.

Therefore, the judgment appealed from is *reversed* and the case is *remanded* for further proceedings in conformity with this decision.